# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

WAYNE KAMAKI PREISTER,

       Defendant.

No. 13-CR-4033-DEO

ORDER ON MOTION TO SUPPRESS

_____

Before the Court is the Defendant, Wayne Kamaki Preister's [hereinafter Mr. Preister], Motion to Suppress (Docket No. 39). The parties appeared for a hearing on this matter on August 15, 2013. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

## I. FACTUAL BACKGROUND

The following facts seem relatively undisputed:

During the first half of 2013, members of the local drug task force began investigating Mr. Preister for possible involvement in the distribution of methamphetamine. A confidential informant informed the Tri-State task force that Mr. Preister was transporting methamphetamine between Omaha and Sioux City in his Honda Accord automobile. See Docket No. 58, Att. 1, p. 2-5. The informant, who stated that he had

traveled with Mr. Preister on these drug runs, told officers that Mr. Preister carried a large amount of methamphetamine on the trips from Omaha to Sioux City, and Mr. Preister also carried a gun while transporting the drugs. Based on this information, the officers applied for search warrant so they could place a GPS tracker on/in Mr. Preister's vehicle. Magistrate Judge Strand reviewed the evidence and approved the search warrant allowing the placement of a GPS tracker. Docket No. 58, Att. 1, p. 1, 6. The task force installed the GPS tracker on Mr. Preister's vehicle on March 18, 2013. After a period of inactivity due to Mr. Preister's arrest in Omaha, the task force was informed on April 9, 2013, by a second informant, that Mr. Preister was again transporting drugs between Omaha and Sioux City.

On April 12, 2013, members of a drug task force contacted Woodbury County Deputy Todd Trobaugh. Based on the information gathered from the tracker, the task force knew that Mr. Preister was traveling between Sioux City and Omaha. The drug task force requested that Deputy Trobaugh stop Mr. Preister because the task force believed Mr. Preister was transporting drugs. The task force advised Deputy Trobaugh

that Mr. Preister drove a 1996 Honda Accord with tinted windows. The task force officers indicated that Mr. Preister's window tint was illegal and, thus, a basis for a traffic stop. The task force also informed Deputy Trobaugh that Mr. Preister was probably armed, had shot someone in the past, and likely had hidden drugs behind the dashboard of the vehicle.

When Deputy Trobaugh saw the car, he observed the tinted windows and stopped the vehicle. Deputy Trobaugh approached Mr. Preister's vehicle in a normal manner, although he had been advised by the task force that Mr. Preister may have a weapon. When he reached the vehicle, Deputy Trobaugh saw Mr. Preister's co-defendant, April Salamanca, reach under the vehicle's dashboard. Deputy Trobaugh ordered Mr. Preister and Ms. Salamanca to place their hands on the car's dashboard. Deputy Trobaugh then waited for backup.

When backup arrived, Deputy Trobaugh had Mr. Preister step out of the vehicle, conducted a patdown search, and asked Mr. Preister to come to the deputy's squad car. Ms. Salamanca remained in the Honda and was watched by the backup deputy.

Once in the squad car, Deputy Trobaugh told Mr. Preister that he was writing him a citation for the tinted windows. Deputy Trobaugh then asked to search Mr. Preister's vehicle. Mr. Preister declined to consent to the search. When Mr. Preister refused consent, Deputy Trobaugh stated that his canine unit would conduct a sniff test outside the vehicle.

Deputy Trobaugh gave Mr. Preister the citation. He got out of the squad car, returned to Mr. Preister's vehicle and asked Ms. Salamanca to get out while he had the canine unit check around the car. Importantly, Deputy Trobaugh noticed Mr. Preister had left the driver's side door open. Deputy Trobaugh closed the door, but did not shut it so tight that it latched. Deputy Trobaugh then got the canine unit and began walking the dog around the Honda for a free air sniff. When the dog reached the slightly ajar driver's door, Deputy Trobaugh stated that the dog alerted. It is clear from the video of the incident that the dog used its head to begin to pry the door open. Once the dog began to jimmy the door open, Deputy Trobaugh intervened and opened the door so the dog could enter the vehicle. Once inside, the dog barked and otherwise indicated the presence of drugs. (There is no

4

argument in this case regarding the dog's reliability or training, so it will be taken as fact that the dog acted in the manner a drug dog is supposed to.)

In light of the dog's reaction, Deputy Trobaugh advised Mr. Preister and Ms. Salamanca that they were being detained, and placed handcuffs on them. Deputy Trobaugh continued to search the vehicle and found a handgun, a syringe, and marijuana. Deputy Trobaugh arrested Mr. Preister for carrying a concealed weapon and felon in possession of a firearm. Deputy Trobaugh arrested Ms. Salamanca for possession of drug paraphernalia.

After being arrested, Mr. Preister and Ms. Salamanca were taken to the Woodbury County jail, were advised of their rights and were questioned. Ms. Salamanca made certain incriminating statements while Mr. Preister asserted his rights to silence and counsel. Meanwhile, further searches of Mr. Preister's vehicle revealed methamphetamine hidden behind the dashboard. On April 17, 2013, the Government indicted Mr. Preister on the present charges.

## II. ISSUES

The Motion to Suppress argues that Deputy Trobaugh inappropriately allowed the canine unit to enter Mr. Preister's car. The Defendant argues that absent the dog's inappropriate intrusion to his car, the Government did not have probable cause to search his vehicle. Because the search was illegal, Mr. Preister argues that all evidence gathered as a result of it should be suppressed.

## III. ANALYSIS

As noted above, the Defendant, Mr. Preister, asks this Court to suppress the fruits of the stop of Mr. Preister's vehicle in April 2013. Mr. Preister argues that all the evidence, including incriminating statements made by Ms. Salamanca, were the result of an illegal canine search and should be suppressed. The Government responds by making four arguments. First, the Government argues that the drug task force had probable cause to search Mr. Preister's vehicle, regardless of the dog search. (In making this argument, the Government relies in part on the evidence submitted to Magistrate Judge Strand when Judge Strand issued a search warrant authorizing officers to place a GPS tracker on/in Mr.

6

Preister's vehicle).  Second, the Government argues that Deputy Trobaugh's search of Mr. Preister's vehicle was proper under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  Third, the Government argues that the canine search was proper under the 8th Circuit precedent.  Finally, the Government argues that even if the search was somehow improper, Mr. Preister has no standing to suppress Ms. Salamanca's statements.  The Court will consider each argument in turn.

## A. Probable Cause

As the 8th Circuit Court of Appeals recently stated:

> 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.' <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996).  This is because 'the overriding societal interests in effective law enforcement justify an immediate search before the car and its occupants become unavailable.'  <u>California v. Carney</u>, 471 U.S. 386, 393, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).

<u>United States v. Cowan</u>, 674 F.3d 947, 956 (8th Cir. 2012), *reh'g denied* (May 11, 2012), *cert. denied*, 133 S. Ct. 379, 184 L. Ed. 2d 223 (U.S. 2012).

The Government's first argument is that Deputy Trobaugh had probable cause to search Mr. Preister's vehicle before the dog sniff even occurred. As stated in the Government's brief:

> To determine whether probable cause exists, courts must "examine the events leading up to the arrest [or search], and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003). Here, the events leading to the search establish probable cause. In making probable cause determinations "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010).

Docket No. 58, p. 8.

As articulated above, the automobile exception allows officers to search a vehicle without a search warrant so long as probable cause exists to suspect criminal activity. In this case, the drug task force had been contacted by one confidential informant and were told about Mr. Preister transporting drugs in his Honda. The informant had traveled with Mr. Preister and told the task force specifics about how Mr. Preister was involved in the drug trade. Based on that

8

information, the task force applied for a search warrant to place a GPS tracker on Mr. Preister's vehicle.

Last year, the U.S. Supreme Court considered the standard necessary to attach a GPS tracker to an automobile in <u>United States v. Jones</u>, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012).[1] The Court stated that analytical task in that case was to decide whether attaching a GPS tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constitutes a search or seizure within the meaning of the Fourth Amendment. <u>Jones</u>, 132 S. Ct. at 947. The Court ultimately held that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a search. <u>Jones</u>, 132 S. Ct. at 949. That announced rule is derived from an opinion written by Justice Scalia, joined by three justices, and the concurring opinion of Justice Sotomayor. See <u>United States v. Figueroa-Cruz</u>, 914 F. Supp. 2d 1250, 1254-55 (N.D. Ala. 2012).

---

[1] Although the parties did not address the <u>Jones</u> case in their briefs or at the hearing, the Court feels that it is important precedent regarding the present state of law regarding GPS trackers.

Because installing a GPS device is a search, the Government must have probable cause before a GPS device is installed on/in a suspect's vehicle. The newly announced probable cause standard related to GPS devices is the reason that the task force applied for a search warrant before attaching the GPS device to Mr. Preister's vehicle.

Accordingly, the standard to attach a GPS device to a car is the same standard necessary to search a car, probable cause. (Meaning, of course, that the inquiry that must be made to install a GPS device is identical to the inquiry that must be made to search a vehicle: does probable cause exist that the vehicle contains contraband or is involved in illegal activity?). Magistrate Strand found that probable cause existed that Mr. Preister's vehicle was involved in illegal activity, and he authorized a search warrant allowing the task force to install a tracking device on Mr. Preister's car. After the tracking device was installed, the drug task force observed that Mr. Preister's vehicle traveled between Omaha and Sioux City in the manner described by the first confidential informant. Additionally, a second informant came

forward and stated that Mr. Preister was trafficking methamphetamine between Sioux City and Omaha.

Based on the immediate information provided by the second informant, the task force contacted Deputy Trobaugh, advised him that they suspected that Mr. Preister was carrying a gun and drugs, and asked Deputy Trobaugh to stop the vehicle. As stated above, to determine whether probable cause exists, the Court must examine the events leading up to the search and then decide whether the historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. In this case, the Court is persuaded that probable cause existed to search the vehicle absent the canine search. Two informants had told the drug task force that Mr. Preister was carrying drugs. Additionally, the GPS data verified the fact that Mr. Preister was traveling between Omaha and Sioux City in the exact manner and at the times stated by the confidential informants. This information amounts to probable cause. Accordingly, the drug task force had probable cause to search Mr. Preister's vehicle when they instructed Deputy Trobaugh to stop Mr. Preister. Because probable cause existed at the time of the stop, the search of

Mr. Preister's car was appropriate regardless of what happened with the dog sniff.[2]

**B. Terry Search**

Because the Government had probable cause to search Mr. Preister's vehicle, the Court ordinarily would not reach the other issues addressed in the Government's brief. That said, the Court is persuaded it is important to address the other arguments made by the parties.

As stated above, the Government's second argument is that Deputy Trobaugh had authority to search Mr. Preister's vehicle pursuant to Terry v. Ohio, 392 U.S. 1 (1968). United States v. Rowland, 341 F.3d 774, 783-84 (8th Cir. 2003) reviewed Terry type stops related to vehicles. The 8th Circuit stated that in Terry, the Supreme Court held a law enforcement officer may conduct a protective search for weapons if he or she has merely an articulable suspicion a suspect is armed and

---

[2] At various points during the hearing, the Government argued that Magistrate Strand's search warrant allowing the task force to install the GPS tracker gave the Government sufficient authorization to search the vehicle. Because the Court is persuaded that probable cause exists when all the facts are considered together, the Court need not reach the issue of whether the search warrant alone authorized the search of Mr. Preister's vehicle.

dangerous.  <u>Terry</u>, 392 U.S. at 24.  The <u>Terry</u> case did not involve a vehicle search, but its principle (officer safety searches) was eventually extended to include vehicle searches in <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983).  In Long the Court stated:

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

<u>Id.</u> The rationale behind such searches is equally applicable "whether there is an arrest, an inventory search, neither, or both."  <u>United States v. Shranklen</u>, 315 F.3d 959, 961 (8th Cir. 2003).  This means that regardless of the outcome of the stop, even if no arrest or investigatory search is made, a <u>Terry</u> search may still have been appropriate.  Therefore, "[a]t any investigative stop ... officers may take steps reasonably necessary to protect their personal safety."  <u>Id.</u>

In the 8th Circuit, the validity of a <u>Terry</u> search does not depend upon the searching officer actually fearing the

13

suspect is dangerous; rather, such a search is valid if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous. United States v. Roggeman, 279 F.3d 573, 581 (8th Cir. 2002); United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). Additionally, it is well settled a Terry search of a vehicle's interior is permissible even after the un-arrested occupants have been removed from the vehicle. Long, 463 U.S. at 1051-52, stating "just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect in Long's position break away from police control and retrieve a weapon from his automobile. Also, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." See Rowland, 341 F.3d at 783-84.

In this case, the drug task force told Deputy Trobaugh that Mr. Preister routinely carried a weapon, hid it under his dashboard, and had shot someone in the past. When Deputy Trobaugh approached the car, he saw Ms. Salamanca reach under the dashboard. From the video of the stop, it is obvious that

14

Deputy Trobaugh took this action as threatening. Deputy Trobaugh immediately told the vehicle occupants to put their hands on the dashboard where he could see them, and then called for backup. It is clear Deputy Trobaugh believed that Mr. Preister or his co-defendant could have gun. Based on the fact that the drug task force told Deputy Trobaugh that Mr. Preister carried a gun and had shot someone in the past, the deputy's fear was reasonable. Accordingly, under the <u>Terry</u> standard outlined above, Deputy Trobaugh had authority to conduct a <u>Terry</u> search of the vehicle for weapons. Thus, there were independent grounds to search the vehicle, absent both probable cause and the dog sniff.

## C. Dog Sniff

As noted at the outset of this ruling, the bulk of the Defendant's arguments relate to the canine unit's search of the car. Because the Court is ruling that the Government's search of Mr. Preister's vehicle was proper, the Court need not reach this issue. However, a few observations regarding the dog search are appropriate in this situation.

First of all, it is clear from the video and the testimony that although Deputy Trobaugh was only 'supposed' to

search the outside of Mr. Preister's vehicle with the canine unit, he left the door to Mr. Preister's car open, and ultimately opened the door completely so the canine unit could enter the vehicle. Clearly those actions were inappropriate. Were this a different case, with no independent grounds for the search, the Court would suppress the dog sniff and its fruits.

As noted in the Defendant's brief, the Supreme Court recently ruled on the dog sniff issue in <u>Florida v. Jardines</u>, 133 S. Ct. 1409, (2013). In that case, the Supreme Court held that conducting dog sniff from a porch violated expectations of privacy. <u>Id.</u> As Mr. Preister states in his brief:

> Of crucial importance in the decision was the fact that the officer was conducting the dog sniff in an area which was constitutionally protected and wherein the officer was not expressly or impliedly permitted to be. See id. at 1415 ("[A]n officer's leave to gather information is sharply circumscribed when he steps off of [public] thoroughfares and enters the Fourth Amendment's protected areas.").
>
> In this instant, the facts are even more compelling than in <u>Jardines</u>. In <u>Jardines</u>, there was at least the cogent argument to be raised as to whether an individual and their dog were truly unauthorized to be present on an individual's porch. See, e.g., <u>id.</u> at 1420 (Alito, J. dissenting)

16

> (noting that "[t]he law of trespass generally gives members of the public license to use a walkway to approach the front door of a house and to remain there for a brief time"). Here, in contrast, there is absolutely no question that an individual would not be, even implicitly, welcome to climb into an individual's driver seat and begin exploring the areas out of sight of the explorer. As the dog and his handler were operating in a space wherein they were not permitted to be, the use of the dog was an unconstitutional search under the Fourth Amendment. Moreover, Mr. Preister contends that, under <u>Jardines</u>, the intentional or accidental nature of the dog's entrance is not constitutionally significant. See <u>Jardines</u>, 133 S. Ct. at 1416 (noting reference to past decisions that subjective intent of officer is irrelevant).

Docket No. 39, p. 5.

This situation is clearly distinguishable from <u>United States v. Lyons</u>, 486 F.3d 367 (8th Cir. 2007). In that case, the 8th Circuit stated that a dog sniff was not unconstitutional when the dog stuck its head through a van's window because the officer did not create the opportunity for the dog to enter the vehicle. In this case, Deputy Trobaugh obviously and gratuitously assisted the canine unit's entrance into Mr. Preister's Honda. Deputy Trobaugh literally opened the door and ushered the dog inside. Were there not

17

independent grounds allowing Deputy Trobaugh to search the vehicle, the dog sniff would clearly need to be suppressed.

**D. Standing**

The final argument made by the Government is that even if the search should be suppressed, Mr. Preister does not have standing to suppress Ms. Salamanca's statements.

The Defendant's brief sets out the appropriate standard for this argument:

> "The exclusionary rule 'reaches not only primary evidence obtained as a direct result of an illegal search or seizure . . . but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree.'" United States v. Villa-Gonzalez, 623 F.3d 526, 534 (8th Cir. 2010) (quoting Segura v. United States, 468 U.S. 796, 804 (1984)) (omission in original). "Additionally, '[v]erbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search.'" United States v. Riesselman, 646 F.3d 1072, 1078-79 (8th Cir. 2011) (quoting Wong Sun v. United States, 371 U.S. 471, 485 (1963)) (brackets in original). A defendant bears the initial burden of proving that evidence was tainted because an illegal search was the but-for cause of that evidence's discovery. Id. at 1079. Once a defendant meets that burden, the Government bears the "ultimate burden of persuasion to show the evidence is untainted." Id. (citing Alderman v.

> United States, 394 U.S. 165, 183 (1969)).
> Wong Sun stands as the seminal case in
> determining what evidence must be
> suppressed following an unconstitutional
> search.  See generally 371 U.S. 471.

Docket No. 39, p. 9-10.

Of course, the exclusionary rule applies in the context of automobiles.  An automobile is an 'effect' and thus one of the enumerated areas protected by the fourth amendment from unreasonable government search or seizure.  See U.S. v. Chadwick, 433 U.S. 1, 12 (1977); U.S. v. Jones, 132 S. Ct. 945 (2012).  An occupant or recent occupant who was an owner or bailee of the vehicle has standing to raise a fourth amendment challenge to not only the stop itself but also a search of the vehicle and its contents if the Government intruded into or occupied the vehicle for the purpose of obtaining information. U.S. v. Jones, 132 S. Ct. 945 (2012).

In this case, Mr. Preister argues to suppress statements his passenger made after they were both arrested.  The Government argues that Mr. Preister has no standing to suppress Ms. Salamanca's statements.  However, if suppression were appropriate because the deputy inappropriately searched the vehicle, the Court is persuaded that Mr. Preister would

have standing to suppress Ms. Salamanca's statements.  If the suppression were appropriate, the basic <u>Wong Sun</u> 'but-for' test would compel this Court to suppress the statements because 'but-for' the search and subsequent arrest, Ms. Salamanca would never have been interrogated at the Woodbury County Jail, and would never have offered statements against Mr. Preister.  However, because this Court is persuaded that the Government had constitutional grounds to search Mr. Preister's vehicle, probable cause and <u>Terry v. Ohio</u>, the Court need not reach the standing issue.

**IV.  CONCLUSION**

For the reasons set out above, Defendant's Motion to Suppress, Docket No. 39, is **denied**.

**IT IS SO ORDERED** this 27th day of August, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa